# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

              Plaintiff,

v.
                                **MEMORANDUM OF LAW & ORDER**
                                Criminal File No. 18-312 (MJD/LIB)

(1) TIMOTHY OWEN ROOTES,

              Defendant.

Bradley M. Endicott, Assistant United States Attorney, Counsel for Plaintiff.

Daniel S. Le, Le Law Group, Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on Defendant Timothy Owen Rootes'

Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 63], the Government's

Motion for an Order from the Court Finding Defendant's Waiver of Attorney-

Client Privilege [Docket No. 65], and Defendant's motion for discovery [Docket

No. 72].

## II.     BACKGROUND

On December 18, 2018, an Indictment was filed against Defendant Timothy

Owen Rootes alleging: Count 1: Conspiracy to Distribute Methamphetamine

(October 1, 2017 through September 1, 2018), in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(A), and 846; Count 2: Possession with Intent to Distribute

Methamphetamine (May 19, 2018), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A);

Count 3: Felon in Possession of a Firearm (May 19, 2018), in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2); and Count 4: Possession with Intent to Distribute

Methamphetamine (August 1, 2018), in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B).  Attorney Craig Cascarano was appointed to represent Defendant.

On January 30, 2019, Cascarano filed a Motion to Suppress Evidence

Obtained Through Illegal Search and Seizure on March 17, 2018.  [Docket No. 21]

The motion was based on the arguments that 1) the stop was illegal; 2) the

questioning of Defendant exceeded the scope of the traffic stop; 3) the continued

detention of Defendant violated the Fourth Amendment; 4) the officer lacked

probable cause to conduct a warrantless search of Defendant's vehicle and the

search was not authorized by an exception to the warrant requirement; 5) the

questioning of Defendant violated <u>Miranda v. Arizona</u> and the Fourth

Amendment; and 6) the tow inventory of Defendant's vehicle violated the Fourth

Amendment and was tainted by prior illegalities.  Oral argument and an

evidentiary hearing were held on that motion on March 11, 2019.  [Docket No.

26]  On March 14, 2019, Defense counsel filed additional briefing in support of

the motion to suppress.  [Docket No. 28]  The Magistrate Judge issued a Report

and Recommendation recommending denial of the motion [Docket No. 30], and

the Court adopted the Report and Recommendation and denied the motion to

suppress [Docket No. 31].

On August 7, 2019, Defendant pled guilty to Count 1: Conspiracy to

Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A),

and 846.  In the Plea Agreement, the Government agreed to dismiss Counts 2

through 4 of the Indictment at sentencing.  [Docket No. 36]  The parties agreed

that Defendant was subject to a statutory mandatory minimum sentence of 15

years pursuant to 21 U.S.C. § 841(b)(1)(A) because he had previously been

convicted of at least one serious drug felony for which he served a term of

imprisonment of more than 12 months and from which he was released from

imprisonment within 15 years of the commencement of the instant offense.  (Plea

Agreement ¶¶ 2(e), 4(b).)  Specifically, Defendant admitted that he was convicted

of two counts of Second Degree Sale of a Controlled Substance in violation of

Minnesota Statute § 152.022.  (Id.)  The Government reserved the right to argue

that a two-level sentencing enhancement applied for possession of a firearm in

connection with the offense under U.S.S.G. § 2D1.1(b)(1).  (<u>Id.</u> ¶ 5(b).)  Defendant

reserved the right to argue that the two-level enhancement did not apply.  (<u>Id.</u>)

On January 23, 2020, the Court held a sentencing hearing.  The Court

adopted the following Guidelines calculations, as calculated in the Presentence

Investigation Report ("PSI"):

> Total Offense Level: 35
> Criminal History Category: V
> Guideline Range: 262 to 327 months
> Supervised Release Range: 10 years
> Fine Range: $40,000 to $20,000,000

The total offense level was based on a base offense of 36 based on the

parties' stipulation that Defendant was responsible for at least 30,000 but less

than 90,000 kilograms of converted drug weight, U.S.S.G. § 2D1.1(a)(5); a 2-level

enhancement for possession of a firearm in connection with the offense, U.S.S.G.

§ 2D1.1(b)(1); and a 3-level reduction for acceptance of responsibility, U.S.S.G. §

3E1.1.  (PSI ¶¶ 30-41.)  Defendant was subject to a statutory mandatory

minimum of 180 months because he had a previous conviction for a serious drug

felony.  (<u>Id.</u> ¶ 124.)  21 U.S.C. § 841(b)(1)(A).  Defense counsel argued for a

downward variance to the 15-year statutory mandatory minimum based on the

factors under § 3553(a).  [Docket No. 50]  The Government argued for a sentence

of 262 months based on the factors under § 3553(a).  [Docket No. 52]

The Court varied downward and sentenced Defendant to 204 months in

custody, followed by 10 years supervised release.  [Docket Nos. 53, 57]

Defendant did not appeal his conviction or sentence to the Eighth Circuit Court

of Appeals.

On January 11, 2021, Defendant filed the current Motion to Vacate under

28 U.S.C. § 2255.  [Docket No. 63]  Defendant asserts four grounds for his motion:

1) counsel was ineffective for failing to object to the 2-point enhancement for

possession of a firearm; 2) counsel was ineffective because he filed a motion to

suppress evidence found during a traffic stop in Arizona but did not object to the

stop on the grounds that it lacked probable cause because, in fact, Defendant was

not tailgating and because counsel did not file any motions regarding Counts 2

and 3 of the Indictment, which were dismissed; 3) counsel was ineffective

because he advised Defendant to sign a plea agreement that included the § 851

enhancement that was "constitutionally vague and lacked the proper

predicates," and advised Defendant that he would be eligible for "New First Step

[A]ct Programming and time credits," which he was not due to 21 U.S.C. §

5

841(B)(1)(a); and 4) counsel was ineffective because Defendant told counsel that

he wanted to appeal his sentence on the grounds that the Court violated double

jeopardy by sentencing Defendant to the 15-year statutory mandatory minimum

for the offense plus 2 years based on Defendant's violations in jail and counsel

refused to appeal his sentence and Defendant did not know how to file the

appeal himself.

The Government has moved for an order finding that Defendant has

waived attorney-client privilege.

## III.   DISCUSSION

### A.   Standard under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act
of Congress claiming the right to be released upon the ground that
the sentence was imposed in violation of the Constitution or laws of
the United States, or that the court was without jurisdiction to
impose such sentence, or that the sentence was in excess of the
maximum authorized by law, or is otherwise subject to collateral
attack, may move the court which imposed the sentence to vacate,
set aside or correct the sentence.

Relief under 28 U.S.C. § 2255 is reserved for transgressions of
constitutional rights and for a narrow range of injuries that could
not have been raised on direct appeal and, if uncorrected, would
result in a complete miscarriage of justice.  A movant may not raise
constitutional issues for the first time on collateral review without

establishing both cause for the procedural default and actual
prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted).

Alternatively, the procedural default can be excused if the defendant can

demonstrate that he is actually innocent.  Bousley v. United States, 523 U.S. 614,

622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion,

"[u]nless the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's
> allegations, accepted as true, would not entitle the petitioner to
> relief, or (2) the allegations cannot be accepted as true because they
> are contradicted by the record, inherently incredible, or conclusions
> rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

## B.    Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Defendant must

establish both that his counsel's performance "fell below an objective standard of

reasonableness," and that the deficient performance prejudiced his defense.

Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  The burden is on

Defendant to establish a "reasonable probability that, but for counsel's

7

unprofessional errors, the result would have been different." Id. at 694. "A

reasonable probability is a probability sufficient to undermine confidence in the

outcome." Id. "Unless a defendant makes both showings, it cannot be said that

the conviction . . . resulted from a breakdown in the adversary process that

renders the result unreliable." Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005)

(quoting Strickland, 466 U.S. at 687). The Court "need not address the

reasonableness of the attorney's behavior if the movant cannot prove prejudice."

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

     Counsel's performance is deficient if it falls outside of the "wide range of

reasonable professional assistance," although there is a strong presumption that

counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all

too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable." Id. "Counsel's performance is

deficient when it is less competent than the assistance that should be provided by

a reasonable attorney under the same circumstances." <u>Chambers v. Armontrout</u>,

907 F.2d 825, 828 (8th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 687).

> The two part <u>Strickland</u> test applies to challenges to guilty pleas
> based on ineffective assistance of counsel.  [The defendant] has the
> burden to prove both that his counsel's representation fell below an
> objective standard of reasonableness, and that there is a reasonable
> probability that, but for counsel's errors, he would not have [pled]
> guilty and would have insisted on going to trial.

<u>Tinajero-Ortiz v. United States</u>, 635 F.3d 1100, 1103 (8th Cir. 2011) (citations

omitted).

> "Courts should not upset a plea solely because of <u>post hoc</u> assertions
> from a defendant about how he would have pleaded but for his
> attorney's deficiencies."  Instead, "[j]udges should . . . look to
> contemporaneous evidence to substantiate a defendant's expressed
> preferences."

<u>Meza-Lopez v. United States</u>, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting <u>Lee v.</u>

<u>United States</u>, 137 S. Ct. 1958, 1967 (2017)).

## C.    Waiver of Attorney-Client Privilege

The Government moves for an order finding that Defendant has waived

his attorney-client privilege with respect to material communications between

defense attorney Craig Cascarano and Defendant.  The Government notes that

Defendant has based his motion to vacate on ineffective assistance of counsel and

argues that, in order to address Defendant's petition for habeas relief, it is

necessary to obtain an affidavit from defense counsel regarding the issues underlying Defendant's claims.

A defendant "cannot use attorney-client privilege as both a shield and a sword." United States v. Davis, 583 F.3d 1081, 1090 (8th Cir. 2009) (citation omitted). A defendant waives attorney-client privilege when he makes

> an attack . . . upon his attorney's conduct which calls into question the substance of their communications. A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. . . . Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived.

Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) (citations omitted).

"Voluntary disclosure of attorney client communications expressly waives the privilege." Davis, 583 F.3d at 1090 (citation omitted). A defendant also "waive[s] the attorney-client privilege when [he] assert[s] he should be able to withdraw his guilty plea based on the erroneous advice of his [] counsel." Id. (citation omitted).

10

Here, Defendant has waived attorney-client privilege with respect to the issues alleged by Defendant, and former defense counsel may provide that otherwise privileged information to the Government in an affidavit to address the claims made by Defendant and in testimony at an evidentiary hearing.

### D.    Motion for Discovery

Defendant filed a Pro Se Motion for Second Extension for Time to File Response, which also contained a request for a subpoena of records of jail visits, telephone calls, and mail from Cascarano and for a copy of Defendant's sentencing transcript.  [Docket No. 72]  The Court granted Defendant's request for a 90-day extension of time to respond and appointed counsel to represent Defendant with regard to his § 2255 motion.  [Docket No. 75]  The Court reserved ruling on the discovery requests until counsel was appointed.  [Id.]  The Government opposes the request for a subpoena.

"[D]iscovery in Section 2255 habeas proceedings is governed by Rule 6 of the Rules Governing Section 2255 Proceedings, which permits discovery only with leave of court after a showing of good cause."  United States v. Reichel, No. 14-CR-0298 (WMW/FLN), 2020 WL 638898, at *1 (D. Minn. Feb. 11, 2020) (gathering cases).

11

To the extent that Defendant seeks jail records documenting times and durations of telephone calls, visits, or letters between Defendant and Cascarano, Defendant has failed to demonstrate how the records are relevant to his current motion.  Defendant does not allege that Cascarano was ineffective for failing to communicate with Defendant.  To the extent that Defendant seeks actual copies of the contents of correspondence between Defendant and Cascarano or tape recordings of telephone calls between Defendant and Cascarano, if those items exist and are within the Government's possession, they appear relevant to what Defendant and Cascarano stated to one another about filing an appeal.  Thus, to the extent such discovery exists and is within the Government's possession, the Government is ordered to provide copies of such letters or telephone call recordings to Defendant's counsel.

To the extent that Defendant seeks preparation of a transcript of his sentencing hearing, Defendant's counsel can arrange with the Court Reporter for such preparation without the need for a Court order.

### E.      Ground One: Failure to Object to the Firearm Enhancement

Defendant argues that, although the Plea Agreement allowed the parties to argue the applicability of the firearm enhancement, Cascarano failed to object to the applicability of the enhancement in the PSI.  Defendant asserts that the

application of the 2-level enhancement increased his Guideline range and prevented him from entering the Bureau of Prisons' RDAP and earning a year reduction in his sentence.  Defendant claims that he was the passenger, not the driver, of the vehicle where the firearm was located, and, at the time law enforcement found the firearm, he was in a hotel room as a guest.  He further notes that he did not plead guilty to the firearm count of the Indictment, and his DNA was not found on the firearm.

The Government notes that Cascarano avers that he reviewed the PSI with Defendant.  (Cascarano Aff. ¶ 9.)  Defendant indicated to Cascarano that he had no objections to the PSI, including that he had no objection to the two-level firearm enhancement.  (Id.)  The Government further argues that the evidence supporting the firearm enhancement was substantial.  On May 18, 2018, law enforcement surveillance identified Defendant as staying at the AmericInn in Baxter, Minnesota, in a room booked to Ashley Garmaker.  (PSI ¶ 16.)  On May 19, 2018, law enforcement stopped a vehicle in the AmericInn lot, recovered methamphetamine in the passenger seat, and took a statement from the passenger that the methamphetamine had come from Defendant and that Defendant had told the passenger that Defendant possessed a pistol, there was

13

more methamphetamine in the hotel room, and Defendant would leave the hotel

room once law enforcement stopped surveillance.  (Id.)  Later that day, law

enforcement executed a search warrant at the hotel room and found Defendant

and Garmaker in the room, along with methamphetamine, the keys to

Defendant's vehicle, and key cards to a Pelican Center-Breezy Point Timeshare.

(Id. ¶ 17.)  Law enforcement also executed a search warrant for the car identified

as Defendant's.  (Id.)  In the car, they recovered a loaded Taurus 9mm

semiautomatic handgun and ammunition.  (Id. ¶ 18.)  DNA testing revealed that

the gun contained DNA mixture of four or more individuals with major mixture

of two or more individuals.  (Id. ¶ 18.)  The DNA from Garmaker and Defendant

could not be excluded as the source of the major DNA mixture.  (Id.)  Later that

same day, law enforcement executed a search warrant at the Breezy Point unit; in

the kitchen they found a pistol magazine (loaded with 9mm ammunition),

methamphetamine, and a digital scale.  (Id. ¶ 19.)  In the rest of the unit, they

found more methamphetamine, as well as over $2,000 in cash and small amounts

of cocaine and marijuana.  (Id.)

Without an evidentiary hearing, the Court cannot make a credibility

determination regarding whether Defendant or Cascarano is telling the truth

about whether or not Defendant told Cascarano that he wished to object to the

firearm enhancement.  <u>Watson v. United States</u>, 493 F.3d 960, 964 (8th Cir. 2007).

Even if the Court accepted Defendant's claim that he did tell Cascarano to object

to the firearm enhancement on the grounds that the firearm recovered from the

vehicle was not his, the Court concludes that Defendant cannot show prejudice.

Under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement applies "[i]f a dangerous

weapon (including a firearm) was possessed."  "The enhancement should be

applied if the weapon was present, unless it is clearly improbable that the

weapon was connected with the offense."  U.S.S.G. § 2D1.1, cmt., app. n.11.

Defendant claims that the PSI was inaccurate insofar as he was the passenger,

not the driver, of the vehicle in which the firearm was found and that he was in

the hotel room as a guest.  He also points out that there was not an affirmative

match to his DNA on the firearm.  He raises no other argument regarding the

accuracy of the PSI.  Therefore, the evidence in the record remains undisputed

that an individual arrested after being in the AmericInn lot with

methamphetamine that the individual stated was from Defendant also stated

that Defendant had told the individual that Defendant possessed a pistol, there

was more methamphetamine in the hotel room, and he would leave the room

once law enforcement ended surveillance.  Nor does Defendant dispute that the keys to the vehicle in which the firearm was located were found in the AmericInn room with Defendant and Garmaker, methamphetamine, and cash. He claims that he was a passenger, not a driver, in the car, but does not dispute that he was in the car driving between the Breezy Point unit and the AmericInn unit, both of which contained his methamphetamine that he planned to sell.  Nor does he dispute that a loaded magazine was located in the kitchen of the Breezy Point unit with methamphetamine and a digital scale.  During Defendant's change of plea hearing, he testified under oath that he had rented the unit at Breezy Point, that the methamphetamine in that unit was his, and that he planned to sell it.  He further testified that the methamphetamine in the AmericInn hotel room was his and that he planned to sell it.  (See also Plea Agreement ¶ 2(b).)  Accepting Defendant's claims as true (that he was a passenger and a guest), even if Defendant had objected to the firearm enhancement, considering the foregoing evidence, there is no reasonable probability that the Court would have found that it was clearly improbable that Defendant possessed the firearm as a tool of the drug trade for protection and intimidation.  Cf. United States v. Martin, 851 F. App'x 658, 659 (8th Cir. 2021).

F.      **Ground Two: Pretrial Motions**

1.      **Motion to Suppress Related to the Traffic Stop**

Defendant asserts that counsel was ineffective because, although he filed a

motion to suppress evidence found during a traffic stop in Arizona, he did not

specifically object to the stop on the grounds that it lacked probable cause

because, in fact, Defendant was not tailgating.

Before Defendant entered a guilty plea, Cascarano filed a motion to

suppress the evidence seized as a result of the March 17, 2018 Arizona traffic

stop.  [Docket No. 21]  The motion was based on various grounds, including that

"[t]he stop of Mr. Rootes was illegal."  [Id.]  A hearing was held on the motion.

[Docket No. 26]  Arizona State Trooper Jay Hutton testified at the hearing that

Defendant drove past him approximately two vehicle lengths behind the car in

front of him.  ([Docket No. 30] Report and Recommendation ("R&R") at 2-3.)  He

further testified that he followed Defendant's vehicle on the highway and

measured the gap time between Defendant's vehicle and the car he was

following as approximately 0.41 seconds.  (Id. at 3.)  Cascarano filed a post-

hearing memorandum in support of his motion to suppress, which focused on

the argument that law enforcement lacked a basis for expanding the traffic stop

and that law enforcement should have obtained a search warrant to search

17

Defendant's vehicle.  [Docket No. 28]  The Court denied the motion to suppress

and ruled that the stop and search of the vehicle was constitutional.  [Docket

Nos. 30-32]  The Court noted that "it is well established that any traffic violation,

no matter how minor, will provide probable cause to justify a traffic stop.  See,

e.g., United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008); United States v.

Coney, 456 F.3d 850, 857 (8th Cir. 2006) ("We completely agree . . . that [the

officer] had probable cause to stop the . . . van because he objectively had a

reasonable basis for believing that the van was speeding.").  (R&R at 9.)  The

Court explicitly found "credible Trooper Hutton's testimony that Defendant was

following the vehicle in front of him at an unsafe distance."  (Id.)  "In Arizona,

following the vehicle in front of you too closely is an independent traffic

violation that will justify initiating a traffic stop of the vehicle.  See A.R.S. § 28-

730; State v. Sweeney, 224 Ariz. 107 (Ct. App. 2010).  Accordingly, Trooper

Hutton lawfully stopped Defendant's vehicle on that basis." (Id.)

   Cascarano did, initially, challenge the legality of the Arizona traffic stop.

He simply did not further pursue this argument in the post-hearing briefing.  It

cannot be said that his performance was deficient.  Additionally, based on the

evidence in the record, the Court did address the legality of the initial stop after

receiving testimony on the issue, and Defendant cannot show that there was any prejudice from Cascarano's failure to pursue this objection further.

### 2.    Other Pretrial Motions

Defendant asserts that Cascarano was ineffective for failing to file motions regarding Counts 2 and 3 of the Indictment.  These counts were dismissed.  The Government retorts that Cascarano avers that Defendant never requested that he file any motions to object to the seizure of evidence related to Counts 2, 3, or 4 of the Indictment.  (Cascarano Aff. ¶¶ 6-7.)

Defendant fails to assert allegations that, if true, would entitle him to relief. With regard to the firearm enhancement, the Court addressed that issue in Ground One.  Apart from the firearm enhancement, Defendant gives no indication how he was prejudiced by Cascarano's failure to file pretrial motions with regard to Counts 2 and 3.  Defendant does not indicate what types of motions should have been filed or why a motion would have been justified and successful, so there is no indication of how Cascarano's performance was deficient.  And Counts 2-4 were all dismissed, so there is no showing of prejudice.  There is no evidence from which the Court could conclude that there was a reasonable probability that the outcome would have been different if

Cascarano had filed pretrial motions, such as motions to suppress, with respect to Counts 2-3.

### G.    Ground Three: Plea Agreement Advice

Defendant asserts that Cascarano improperly advised him to sign the Plea Agreement including an enhancement under 21 U.S.C. § 851.  Defendant asserts that he did not have sufficient qualifying predicate convictions.  He further argues that the § 851 enhancement should have been presented to the grand jury.  Defendant also asserts that counsel told him that he would be eligible for the new First Step Act programming and time credits, but he was not due to the 21 U.S.C. § 841(B)(1)(a) conviction.

The Government points out that Cascarano avers that he explained all components of the Plea Agreement and sentencing stipulations and informed Defendant of the 180-month mandatory minimum.  (Cascarano Aff. ¶ 8.)  Cascarano further states that he "never indicated [to Defendant] that the predicate for an 851 enhancement must be presented to a grand jury."  (Id. ¶ 11.)  Cascarano avers that he met with Rootes immediately before sentencing and again reviewed the possible sentence, including the downward variance motion filed on his client's behalf.  (Cascarano Aff. ¶ 12.)  Cascarano avers that Defendant was aware and advised by defense counsel that there was a 180-

20

month mandatory minimum, based on the ten-year mandatory minimum for the

drug conspiracy, and a five-year consecutive sentence established by the § 851

enhancement.  (Id. ¶ 13.)  Cascarano avers that Rootes never asked him for any

advice regarding the First Step Act and he offered no advice on that issue.

(Cascarano Aff. ¶ 11.)

      Under oath at the change of plea hearing, Defendant testified that he was

previously convicted of Second Degree Sale of a Controlled Substance in

violation of Minnesota Statute § 152.022, for which he served a term of

imprisonment of more than 12 months, and from which his release was within 15

years of the commencement of the instant offense.  (See also Plea Agreement ¶

2(e); PSI ¶ 55.)  He further testified that he understood that there was a 15-year

mandatory minimum and that he waived his right to argue that the Government

was required to have put the § 851 enhancement before the grand jury.  (See also

Plea Agreement ¶¶ 3, 4(b).)  Defendant does not specify why he believes that the

Minnesota second degree sale of a controlled substance conviction does not

qualify as a serious drug felony subjecting him to the 15-year mandatory

minimum sentence under 21 U.S.C. § 841(b)(1)(A).  Defendant pled guilty to

second degree drug sale in 2011 and, in 2012, was sentenced to 68 months on

count one and 72 months on count 2.  Defendant does not dispute the evidence in

the record that he served more than 12 months on those convictions; nor does he

dispute that he was released within 15 years of the commencement of the instant

offense.  "To qualify as 'serious drug felonies,' [Defendant's] state convictions

must 'involv[e] manufacturing, distributing, or possessing with intent to

manufacture or distribute, a controlled substance' that is listed on the federal

controlled substances schedules.  See 18 U.S.C. § 924(e)(2)."  United States v.

Oliver, 987 F.3d 794, 806 (8th Cir. 2021).  Defendant's conviction for Minnesota

second degree sale of a controlled substance, Minn. Stat. 152.022, subd. 1,

qualifies under this definition.  Thus, Cascarano's advice to accept the Plea

Agreement with the § 851 enhancement was not deficient, and Defendant cannot

show prejudice.

Finally, the Court turns to Defendant's claim that Cascarano told him that

he "would be eligible for all the New First Step [A]ct programming and time

credits," but that he is not because his conviction under  21 U.S.C. § 841(b)(1)(A)

"is not eligible."  Assuming without deciding that Cascarano's performance was

deficient for failing to properly advise Defendant on consequences of his plea

with regard to the First Step Act, Defendant cannot show prejudice because he

points to no specific aspect of the First Step Act for which he would have been eligible but for Cascarano's advice and actions.

### H.    Ground Four: Failure to File an Appeal

Defendant claims that counsel was ineffective because Defendant told counsel that he wanted to appeal his sentence on the grounds that the Court violated double jeopardy by sentencing Defendant to the 15-year statutory mandatory minimum for the offense plus 2 years based on Defendant's violations in jail, and counsel refused to appeal his sentence. Cascarano avers that "[i]mmediately after sentencing, the Defendant clearly and unequivocally indicated he did not wish to appeal the sentence based upon the grounds the Court had imposed a downward variance below the low end of his guideline range." (Cascarano Aff. ¶ 16.)

An attorney's failure to file a notice of appeal after being requested to do so by the client amounts to per se ineffective assistance regardless of the appeal's apparent likelihood of success. Roe v. Flores-Ortega, 528 U.S. 470, 477, 486 (2000). Conversely, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Id. at 477.

23

When a district court receives conflicting statements—one from a §
2255 petitioner and one from her former counsel—the court cannot
make a factual determination based on the relative credibility of
these individuals without the benefit of an evidentiary hearing.  If
neither statement is facially incredible and both contain similar
specificity regarding when the alleged appeal-request conversations
took place (or did not take place), counsel's contrary statement
simply is insufficient to support a finding that the petitioner's
allegations cannot be accepted as true.

Witthar v. United States, 793 F.3d 920, 923 (8th Cir. 2015) (cleaned up).  Thus,

Defendant is entitled to an evidentiary hearing regarding whether, after

consultation with counsel regarding the right to appeal, Defendant requested

that counsel file an appeal.


Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.    The Government's Motion for an Order from the Court
      Finding Defendant's Waiver of Attorney-Client Privilege
      [Docket No. 65] is **GRANTED**.

2.    Defendant's motion for discovery [Docket No. 72] is **DENIED
      IN PART** and **GRANTED IN PART** as follows: Defendant's
      motion is denied except that, to the extent that actual copies of
      the contents of correspondence between Defendant and Craig
      Cascarano or tape recordings of telephone calls between
      Defendant and Cascarano exist and are within the
      Government's possession, the Government is ordered to

24

provide copies of such letters or telephone call recordings to
Defendant's counsel.

3.      An evidentiary hearing on Defendant's Motion to Vacate
        under 28 U.S.C. § 2255 [Docket No. 63], limited to the issue of
        whether, after consultation with counsel, Defendant requested
        that defense counsel file an appeal, shall be scheduled in the
        near future.

Dated:  November 10, 2021          s/Michael J. Davis
                                   Michael J. Davis
                                   United States District Court