UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                **MEMORANDUMN OF LAW & ORDER**
                                 Criminal File No. 18-312 (MJD/LIB)

(1) TIMOTHY OWEN ROOTES,

        Defendant.

Andrew R. Winter, Assistant United States Attorney, Counsel for Plaintiff.

Daniel S. Le, Le Law Group, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Timothy Owen Rootes' Motion to Vacate under 28 U.S.C. § 2255.  (Doc. 63.)  The Court held an evidentiary hearing on May 31, 2022.  The hearing was limited to the sole issue of whether, after consultation with counsel, Defendant requested that defense counsel file an appeal.

1

## II.     BACKGROUND

On December 18, 2018, a four count Indictment was filed against Defendant Timothy Owen Rootes.  Attorney Craig Cascarano was appointed to represent Defendant.  On August 7, 2019, Defendant pled guilty to Count 1: Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  In the Plea Agreement, the Government agreed to dismiss Counts 2 through 4 of the Indictment at sentencing.  (Doc. 36.)  The parties agreed that Defendant was subject to a statutory mandatory minimum sentence of 15 years pursuant to 21 U.S.C. § 841(b)(1)(A) because he had previously been convicted of at least one serious drug felony for which he served a term of imprisonment of more than 12 months and from which he was released from imprisonment within 15 years of the commencement of the instant offense.  (Plea Agreement ¶¶ 2(e), 4(b).)  Specifically, Defendant admitted that he was previously convicted of two counts of Second Degree Sale of a Controlled Substance in violation of Minnesota Statute § 152.022.  (Id.)  The Government reserved the right to argue that a two-level sentencing enhancement applied for possession of a firearm in connection with the offense under U.S.S.G. § 2D1.1(b)(1).  (Id. ¶ 5(b).)  Defendant reserved the right to argue that the two-level enhancement did not apply.  (Id.)

On January 23, 2020, the Court held a sentencing hearing. The Court adopted the following Guidelines calculations, as calculated in the Presentence Investigation Report ("PSI") (Doc. 42):

| | |
|---|---|
| Total Offense Level: | 35 |
| Criminal History Category: | V |
| Guideline Range: | 262 to 327 months |
| Supervised Release Range: | 10 years |
| Fine Range: | $40,000 to $20,000,000 |

The total offense level was based on a base offense level of 36 based on the parties' stipulation that Defendant was responsible for at least 30,000 but less than 90,000 kilograms of converted drug weight, U.S.S.G. § 2D1.1(a)(5); a 2-level enhancement for possession of a firearm in connection with the offense, U.S.S.G. § 2D1.1(b)(1); and a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. (PSI ¶¶ 30-41.) Defendant was subject to a statutory mandatory minimum of 180 months because he had a previous conviction for a serious drug felony. (Id. ¶ 124.) 21 U.S.C. § 841(b)(1)(A). Defense counsel argued for a downward variance to the 15-year statutory mandatory minimum based on the factors under 18 U.S.C. § 3553(a). (Doc. 50.) The Government argued for a sentence of 262 months based on the factors under 18 U.S.C. § 3553(a). (Doc. 52.)

3

The Court varied downward and sentenced Defendant to 204 months in custody, followed by 10 years supervised release. (Docs. 53, 57.) Defendant did not appeal his conviction or sentence to the Eighth Circuit Court of Appeals.

On January 11, 2021, Defendant filed the current Motion to Vacate under 28 U.S.C. § 2255. (Doc. 63.) Defendant asserted four grounds for his motion, including that counsel was ineffective for failing to file an appeal. Defendant asserts that he told counsel that he wanted to appeal his sentence on the grounds that the Court violated double jeopardy by sentencing him to the 15-year statutory mandatory minimum for the offense plus 2 years based on Defendant's violations in jail. Defendant further asserts that counsel refused to appeal his sentence and Defendant did not know how to file the appeal himself.

On November 10, 2021, the Court issued an Order denying Defendant's § 2255 motion on all grounds except for the question of whether defense counsel was ineffective for failing to file an appeal. (Doc. 78.) The Court held that Defendant was entitled to an evidentiary hearing on the question of whether defense counsel was ineffective for failing to file an appeal. The Court also held that Defendant had waived attorney-client privilege with respect to material communications between Cascarano and Defendant and that Cascarano may

provide otherwise privileged information to the Government in an affidavit to address the claims made by Defendant and in testimony at an evidentiary hearing. (Id.)

III.   **DISCUSSION**

    A.   **Standard under 28 U.S.C. § 2255**

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). Alternatively, the procedural default can be excused if the defendant can demonstrate that he is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

5

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

### B.     Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). The burden is on Defendant to establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687). The Court "need not

6

address the reasonableness of the attorney's behavior if the movant cannot prove prejudice."  Apfel, 97 F.3d at 1076.

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that counsel's conduct falls within this broad spectrum.  Strickland, 466 U.S. at 689.  "Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. (citation omitted) "Counsel's performance is deficient when it is less competent than the assistance that should be provided by a reasonable attorney under the same circumstances."  Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

> The two part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel.  [The defendant] has the burden to prove both that his counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial.

Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011) (citations omitted).

> "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Instead, "[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences."

Meza-Lopez v. United States, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting Lee v. United States, 137 S. Ct. 1958, 1967 (2017)).

### C. Failure to File an Appeal

Defendant claims that counsel was ineffective because Defendant told counsel that he wanted to appeal his sentence on the grounds that the Court violated double jeopardy by sentencing Defendant to the 15-year statutory mandatory minimum for the offense plus 2 years based on Defendant's violations in jail, and counsel refused to appeal his sentence. Cascarano avers that "[i]mmediately after sentencing, the Defendant clearly and unequivocally indicated he did not wish to appeal the sentence based upon the grounds the Court had imposed a downward variance below the low end of his guideline range." (Gov. Ex. 1 (Cascarano Aff.) ¶ 16.)

An attorney's failure to file a notice of appeal after being requested to do so by the client amounts to per se ineffective assistance regardless of the appeal's

8

apparent likelihood of success.  Roe v. Flores-Ortega, 528 U.S. 470, 477, 486 (2000).  Conversely, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."  Id. at 477 (citation omitted).

### D. Findings of Fact

Based on the testimony of Defendant and Cascarano at the May 31, 2022 hearing and all the filings and the record in this case, the Court makes the following findings of fact.

Defendant hired Cascarano to represent him in state court criminal cases prior to his being indicted federally in the instant case.  When Defendant was indicted in this case, Cascarano was appointed to represent Defendant on a CJA appointment.

Cascarano and Defendant got along well during his representation in this case.  Cascarano represented Defendant from his initial appearance through his sentencing.  (Docs. 10, 80.)  He filed motions for discovery and to suppress evidence, negotiated a plea agreement, and filed a position pleading regarding sentencing.  (Docs. 15, 21, 35-36, 50.)  Cascarano also reviewed the preliminary PSI and responded that he had no objections.  (Doc. 42 at 35.)   The preliminary

PSI, filed September 18, 2019, included the two-level sentencing enhancement for possession of a firearm in connection with the offense. (Doc. 38 ¶ 31.)

Cascarano communicated with Defendant about the preliminary PSI via telephone on or about September 18, 2019. (See Def. Ex. 2.) Defense Exhibit 2, a record of phone calls made from the Sherburne County Jail to Cascarano using Defendant's pin number, likely underrepresents the number of phone calls between Defendant and Cascarano because Defendant was often in segregation with restricted phone privileges while in the Sherburne County Jail and used other prisoners' pin numbers to make phone calls during those times. Cascarano explained the 2-level enhancement to Defendant, stressing that although Defendant was lucky that the PSI placed Defendant in criminal history category V, rather than VI, as they had anticipated, in general, the PSI was not necessarily all that favorable based on Defendant's prior record. Cascarano also explained that the Court would likely impose the enhancement even if the counts of the indictment to which Defendant did not plead were dismissed because the enhancement is based on a defendant's criminal history, not just the current offense. Cascarano told Defendant he could go out to the jail and explain the PSI in person but Defendant said he understood the sentencing guidelines and that

he did not want to see the PSI. Cascarano did not mail the PSI to Defendant. On October 10, 2019, Cascarano notified probation via email that Defendant had no objections to the preliminary PSI. (Doc. 42 at 35.)

As sentencing drew closer, Cascarano became uncomfortable that Defendant did not have a copy of the PSI and did not have any objections to the PSI even though it included the 2-level enhancement. Cascarano delivered a copy of the PSI to Defendant at the Sherburne County Jail approximately two days before Defendant's sentencing hearing. Defendant threw the PSI in the wastebasket.

When Cascarano and Defendant met at the courthouse on the day of sentencing, they both hoped that Defendant would be sentenced to a prison term beginning with a "1." Cascarano expected the Court to sentence Defendant to the mandatory minimum sentence of 180 months but knew that the Court could impose whatever sentence it deemed reasonable. After sentencing, Defendant was upset that the Court gave him 24 months over the 180-month mandatory minimum sentence. Defendant felt this additional time in custody was due to activity that had occurred while Defendant was detained in the Sherburne County jail.

Immediately after sentencing, Cascarano spoke to Defendant about whether an appeal would have merit. At that time, Defendant stated that he did not wish to appeal. (Cascarano Aff. ¶ 16.) Therefore, Cascarano did not file a notice of appeal on Defendant's behalf. Cascarano would have filed a notice of appeal if he had been instructed to do so by Defendant, even if he believed an appeal did not have merit. For Cascarano, filing an appeal of conviction in a federal case is merely a matter of having his secretary update a standard notice of appeal and filing that notice. The task is not difficult or time-consuming. Although Cascarano would have counseled Defendant that he thought an appeal was frivolous because the Eighth Circuit cannot review the length of a downward departure, Defendant's sentence was 58 months below the guideline range, and the Eighth Circuit considers sentences within the guidelines to be reasonable, Cascarano would have filed the appeal if Defendant instructed him to do so.

During their conversation after sentencing, Defendant was concerned about the reasons why the Court sentenced him to 24 months above the mandatory minimum sentence and about whether Cascarano would keep his promise to return $750 of his fee from the state court work for Defendant so

12

Defendant could have some money on his account once he entered the BOP. Cascarano kept this promise by sending a check for $750 to Defendant's mother Donna Dehn for her to place on Defendant's prison account.

After sentencing, Cascarano heard nothing from Defendant until Defendant filed this habeas corpus motion to vacate his sentence on January 13, 2021.

### E.   Analysis

Defendant argues that Cascarano failed to file an appeal after he instructed him to do so.  Defendant asserts that he wanted Cascarano to appeal his sentence because the Court violated double jeopardy by sentencing him to the 15-year statutory mandatory minimum for the offense plus 2 years based on Defendant's violations in jail awaiting trial.  Defendant argues that Cascarano refused to appeal his sentence and Defendant did not know how to file the appeal himself.

Defendant has not satisfied his burden to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Strickland, 466 U.S. at 694.  At his sentencing, Defendant asked to be sentenced to 180 months, the statutory mandatory minimum.  Thus, Defendant only challenges the additional 24 months he received above that.

In relevant part, the Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted)). Here, Defendant appears to assert that because he was placed on 23-hour lockdown and lost privileges on February 13, March 10, April 6, and August 15, 2019 for having jail-made alcohol in the Sherburne County Jail, the Court should not have added 24 months to his sentence.

Defendant misunderstands the reasons why the Court imposed its sentence. At sentencing, the Court stated,

> [M]y sentence will be as follows. Your advisory guideline sentence is 262 months to 327 months. And the guideline sentence takes into consideration the amount of drugs that you had and also the firearms that you had.
>
> And the court has taken a close look at your sentence, your life, and it's not been a good one. It would have been helpful to the court if you had stabilized yourself in custody while awaiting sentencing, but you didn't, which means that you still have a lot of problems to take care of yourself before you can be a productive person on the street.

(Doc. 80 at 12.)

Thus, the Court did not sentence Defendant to 24 months above the mandatory minimum to punish him for the same behavior that Sherburne County Jail officials punished him for. The Court sentenced Defendant above the

statutory mandatory minimum because he pled guilty to trafficking 60 pounds of methamphetamine in a sophisticated multi-state conspiracy and because his crime involved a firearm. (Id. at 18.) Defendant's disciplinary record while awaiting sentencing was merely evidence that tempered his profession of remorse and introspection. The Court was not required to ignore this behavior. See United States v. Boettger, 316 F.3d 816, 817 (8th Cir. 2003) (finding that although defendant pled guilty, he was not entitled to reduction in offense level based on acceptance of responsibility because he hid after being inadvertently released from jail, fled when he learned he was going back into custody, and used drugs while awaiting trial); United States v. Garrison, 62 F. App'x 746, 747 (8th Cir. 2003) (denying acceptance of responsibility credit for similar reasons). A significant custodial sentence was necessary to provide just punishment for the offense, to reflect the seriousness of the offense, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). The Court varied downward from a guidelines sentence of at least 262 months based on Defendant's troubled childhood. 18 U.S.C. § 3553(a)(1). The Court also recognized that Defendant is addicted to drugs, which is why the Court ordered that upon completion of his custodial sentence, Defendant complete an immediate assessment or participate in a

15

program for substance abuse as approved by the probation officer upon release or relapse during the term of supervised release.  (Doc. 80 at 14-15, 18.)  Thus, the Court did not punish Defendant for the same offenses as Sherburne County Jail officials punished him for.

In addition, "the Double Jeopardy Clause of the Constitution does not apply to prison proceedings and sanctions, because they are not criminal in nature."  Hewlett v. Kallis, No. 19-CV-1123 (WMW/LIB), 2020 WL 1359679, at *6 (D. Minn. Jan. 7, 2020) (citing Dillard v. Watson, No. 17-4802 (JNE/DTS), 2018 WL 3928817, at *4 (D. Minn. Aug. 16, 2018); Jones v. Jett, No. CIV. 10-4201 MJD/AJB, 2011 WL 5507222, at *3 (D. Minn. Aug. 12, 2011), R. & R. adopted, 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 F. App'x 522 (8th Cir. 2012)), R. & R. adopted, 2020 WL 1333134 (D. Minn. Mar. 23, 2020)).  Prison disciplinary proceedings "pertain to enforcement of institutional rules for the purpose of maintaining institutional security and order which are not subject to double jeopardy considerations."  Jones, 2011 WL 5507222, at *3 (citations omitted).  Accordingly, Defendant was not subject to double jeopardy and therefore, even had Cascarano raised this issue on appeal, there is no reasonable probability that the result would have been different.  See Strickland, 466 U.S. at 694.

At his sentencing hearing, Defendant told the Court, "[I]f you needed a reason to give me more than 15 years, I gave you enough reasons. . . ." (Id. at 19.) At the evidentiary hearing, Defendant also took responsibility for the behavior that led to his being sentenced to an additional 24 months in prison. Therefore, even Defendant admits that the Court had reasons to sentence him as it did.

Cascarano also did not refuse to appeal Defendant's sentence. After sentencing, Cascarano met with Defendant and Defendant did not ask Cascarano to file an appeal. In fact, Defendant "clearly and unequivocally indicated he did not wish to appeal the sentence based on the grounds that the Court had imposed a downward variance below the low end of the guideline range." (Cascarano Aff. ¶ 16.) Defendant was focused on why the Court gave him 24 months above the 180-month mandatory minimum sentence and whether Cascarano was going to keep his promise to refund him $750. That Defendant never followed up with Cascarano to check on the progress of an alleged appeal supports Cascarano's version of the facts, especially since Defendant had the ability to speak to Cascarano on the telephone, at least while he was in the Sherburne County Jail. (Def. Ex. 2.) In addition, Defendant is more than capable of writing cogent letters. (See Docs. 63-1, 90.) Therefore, the Court assumes

17

Defendant would have written to Cascarano to follow up on any appeal even when prisoners' telephone privileges were curtailed during the Covid-19 pandemic.  (See Doc. 63-1 (Defendant's January 2021 letter to the Court stating, among other things, that he had no access to a telephone or computer starting in March 2020 due to Covid-19)).

Although Defendant testified that on the day of his sentencing, he told Cascarano to file an appeal, the Court finds Cascarano's testimony on this point more credible.  Therefore, Cascarano's alleged failure to file an appeal does not provide the basis for an ineffective assistance of counsel claim under § 2255.  See United States v. Jones, 777 F. App'x 177, 178 (8th Cir. 2019) (affirming denial of relief for ineffective assistance of counsel claim under 20 U.S.C. § 2255 when defendant was upset about sentence but did not instruct attorney to file an appeal) (citing Roe, 528 U.S. at 478) (holding that counsel who consulted with defendant performs in professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal); Barger v. United States, 204 F.3d 1180, 1181-82 (8th Cir. 2000) (noting that "for Section 2255 movant to succeed on claim that counsel was ineffective for failing to file appeal, desire to appeal must be manifest")).

### F. Certificate of Appealability

Regarding the Court's decisions on the merits, it concludes that no "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Therefore, the Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Petitioner Timothy Owen Rootes' pro se Motion to Vacate under 28 U.S.C. § 2255 **(Doc. 63)** is **DENIED**.

2. The Court denies a Certificate of Appealability in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   June 29, 2022                          s/Michael J. Davis
                                                Michael J. Davis
                                                United States District Court